United States Court of Appeals,

Fifth Circuit.

No. 95-10218.

WORD OF FAITH WORLD OUTREACH CENTER CHURCH, INC., A dissolved Corporation on behalf of its members;  Word of Faith World Outreach Center Church, a Church on Behalf of its Members, Plaintiffs-Appellants,

v.

Diane SAWYER, An individual;  Capital Cities/ABC Inc., A New York Corporation;  American Broadcasting Companies, Inc., A Delaware Corporation;  ABC News, Inc., A Delaware Corporation;  Robbie Gordon, An individual;  Kelly Sutherland, An individual;  Jeff Cooke;  Trinity Foundation, Inc., A Texas non-profit Corporation;  Ole Anthony, An individual;  Harry Guetzlaff, An individual;  Powell Holloway, An individual;  John Does, and/or Jane 1-30, Defendants-Appellees,

A H Belo Corp., A Texas Corporation;  WFAA-TV, Inc., A Texas Corporation;  Bill Brown;  Dallas Morning News, Inc., A Texas Corporation;  Ed Housewright, An individual;  Steve Blow, An individual;  Ed Bark, An individual, Defendants.

Aug. 7, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, JONES and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This lawsuit began as a result of critical television reports on the weekly ABC news program *PrimeTime Live* concerning Reverend Robert Tilton and Word of Faith World Outreach Center Church.  The Church and Word of Faith World Outreach Center Church, Inc. appeal the decision of the district court dismissing their claims against ABC and others who assisted ABC in preparing the shows for violation of the RICO statute and a federal civil rights statute.  42 U.S.C. § 1985(3).  We affirm.

I. BACKGROUND

The facts are distilled from appellants' pleadings.  Word of Faith World Outreach Center Church is a Christian church based in Farmers Branch, Texas, a suburb of Dallas.[1]  Robert Tilton is

---

[1]The Appellants are Word of Faith World Outreach Center Church, Inc. ("WOF, Inc.") and Word of Faith World Outreach Center Church.  In March 1992, WOF, Inc. transferred all its assets to the Church and thereafter dissolved.  Appellants will be collectively referred to as the "Church" or "Appellant."

the Church's head pastor, and central to the Church's beliefs is the importance of tithing and making vows to God. The Church teaches that expressions of faith as manifested by financial vows to God, through the Church, are rewarded by God with physical, spiritual, and financial prosperity. At the peak of the Church's popularity, approximately 8,000 people regularly attended services, with an additional national television audience estimated in the hundreds of thousands.

In addition to weekly services and television broadcasts, the Church on a regular basis mails items of correspondence to members who have asked that their names be placed on the Church's mailing list. Often, these mailings include materials that the member can return to the Church in an enclosed preaddressed envelope, such as a prayer cloth or prayer request, and which Reverend Tilton has promised to pray over. The Church classifies mail returned as a result of these mailings as "regular mail." The Church also routinely receives unsolicited pieces of mail, known by the Church as "white mail."

In the spring of 1991, journalists working for ABC's weekly news program *PrimeTime Live* (*"PrimeTime"* ) began an investigation of Tilton. *PrimeTime's* investigation was aided by Ole Anthony and others affiliated with the Trinity Foundation, Inc., a non-profit corporation founded by Anthony for the purpose of supporting Christ centered communication projects. Anthony is passionately opposed to some televangelists, including Tilton.

On November 21, 1991, *PrimeTime* broadcast a report concerning three televangelists, including Tilton, that was highly critical of Tilton and his fund-raising practices. A week later, *PrimeTime* broadcast a brief update reporting reactions to the November 21 broadcast. On July 9, 1992, the original November 21 program was rebroadcast, with certain minor changes, together with a follow-up report. *PrimeTime's* ratings, which had been low, significantly improved following the Tilton broadcast.

The theme of the broadcasts was that Tilton personally acquired millions of dollars of donations sent to the Church, and that he never prayed over thousands of prayer requests. *PrimeTime's* claim that Tilton failed to pray over the prayer requests derived from prayer requests purportedly found during "trash sweeps" conducted by persons affiliated with the Trinity Foundation

at the direction of ABC representatives.

The Church disputes *PrimeTime's* claim that prayer requests where thrown away before the promised prayers by Tilton. As evidence, the Church points to its sophisticated document and financial accounting system which accounts for every piece of mail received and its contents. This system involves a bank and a mail-handling contractor, and the Church asserts that it can establish that none of the prayer requests reportedly found in the trash could have been found at the times and places claimed by those who carried out the "trash sweeps." Instead, the Church claims, the items depicted in the trash consist of: (1) Church mailings received directly by ABC operatives who had placed their names on the Church's mailing lists, and which were never mailed back to the Church; (2) items obtained from the Church by the defendants while attending worship services, and which also were never mailed back to the Church; (3) "regular mail" and other items stolen by the defendants from the bank and mail-handling contractor; and (4) "white mail" stolen from either the bank or the Church.

Following the broadcast, Church membership and financial giving dropped sharply. This, in turn, required the Church to close its television ministry and reduce its outreach ministry. Additionally, since the *PrimeTime* broadcasts, the Church has been investigated by numerous local, state, and federal authorities.

In November 1993, the Church brought suit on behalf of its members against Capital Cities/ABC, Inc., Diane Sawyer, co-anchor of *PrimeTime,* the Trinity Foundation, Ole Anthony, and several other business entities and persons associated with the broadcasts. The Church alleged that through a pattern of racketeering acts ABC and the other defendants sought to drive the Church out of business. The alleged racketeering acts included interstate transportation of stolen computer disks; theft of donations, Church mail, and other Church property by certain defendants or by bank, mail-handling, or Church employees who had been persuaded to help the defendants; wire fraud in the form of false statements made during broadcasts; a scheme to deprive the Church, its bank, its mail-handling contractor, and its law firm of the honest services of its loyal employees; and obstruction of justice. Additionally, the Church sought recovery pursuant to 42 U.S.C. § 1985(3),

claiming defendants conspired to deprive the Church and its members of their right to exercise their religious beliefs.

All defendants moved to dismiss for failure to state a claim upon which relief can be granted. The district court granted the motions, finding that the Church failed to plead a pattern of racketeering activity, and that conspiracies motivated by religious animus are not actionable under § 1985(3). The Church appeals.

## II. DISCUSSION

### A. Standard of Review

We review *de novo* the district court's dismissal for failure to state a claim. *Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.,* 30 F.3d 627, 629 (5th Cir.1994). The district court's decision may be upheld "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994) (internal quotation and citation omitted). We accept as true all well-pleaded facts, and view them in the light most favorable to the non-moving party. *Capital Parks,* 30 F.3d at 629.

### B. Racketeering Claims

The Church alleges the defendants violated 18 U.S.C. § 1962(c) and (d) of the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961-1968. Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering.[2] Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c). Under both subsections, RICO claims require "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In re Burzynski,* 989 F.2d 733, 741-42 (5th Cir.1993) (*quoting Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988), *cert. denied,* 489

---

[2]18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)).

The central issue on appeal is whether the Church sufficiently pled a "pattern of racketeering activity."[3] "Racketeering activity" consists of two or more predicate offenses, defined by the statute to include acts violating federal wire or mail fraud statutes. 18 U.S.C. § 1961. To establish a pattern of racketeering activity, the Supreme Court explained in *H.J. Inc. v. Northwestern Bell Telephone, Co.* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), that a plaintiff "must show that the racketeering predicates are *related,* and that they amount to or pose a threat of *continued criminal activity.*" *Id.* at 239, 109 S.Ct. at 2900 (emphasis added). The element of relatedness is established if the acts have the "same or similar purposes, results, participants, victims, or methods of commission." *Id.* at 240, 109 S.Ct. at 2901 (internal quotation and citation omitted). To establish continuity, plaintiffs must prove "continuity of racketeering activity, or its threat." *Id.* at 241, 109 S.Ct. at 2902. This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that "by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. A closed period of conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. An open period of conduct involves the establishment of "a threat of continued racketeering activity." *Id.* This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 242-43, 109 S.Ct. at 2903. The Court stated that in enacting RICO, Congress was concerned with "long-term criminal conduct." *Id.* at 242, 109 S.Ct. at 2902.

Defendants do not contest the "relatedness" element of the "pattern of racketeering" requirement. Issue is joined by the parties over the continuity of ABC's alleged conduct: the Church contends it pled both a closed period of conduct and an open period of conduct as described in *H.J. Inc.* We disagree, as three of this court's precedents foreclose the establishment of continuity.

---

[3]Appellees would also sustain the district court's judgment on the grounds that the Church did not plead either "predicate acts" or injury, requirements of RICO that have particular legal characteristics. We do not reach these issues, although it should be evident that by predicating our holding on RICO's pattern requirement, we do not accept ABC's blanket contention that a RICO claim can never arise from a television broadcast.

In the first case, a doctor alleged that during the course of a lawsuit with an insurance company over payment of claims, the insurance company and others committed many fraudulent acts, including sending letters to other insurers to dissuade them from paying on the doctor's claims; creating a company to generate negative reviews of the doctor's methods of treatments; and "goading" government agencies into investigating the doctor. *In re Burzynski,* 989 F.2d 733 (5th Cir.1993). This court concluded that the doctor failed to plead the continuity element of a "pattern of racketeering":

> *All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended. In [*Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531 [103 L.Ed.2d 836] (1989) ], we affirmed the dismissal of a RICO claim where the plaintiff alleged multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction. In *Delta,* the lawful transaction was a merger; here, it is the defense of a lawsuit—which is now over. The conduct did not constitute or threaten long-term criminal activity.

*In re Burzynski,* 989 F.2d at 743.

Similarly, in *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453 (5th Cir.1991) the court found a lack of continuity. The plaintiff, Mrs. Grant, sued her former husband for depriving her of her community property interest in a partnership in which he had been an active member. To establish continuity, Mrs. Grant claimed a closed period of conduct. The court held, however, that

> there is no threat here of continued criminal acts. [Mr.] Grant's acts which were alleged to have deprived Mrs. Grant of a property interest were, when completed, without threat of repetition. Short-term criminal conduct is not the concern of RICO.

*Calcasieu,* 943 F.2d at 1464.

The earliest case that discusses the element of continuity under RICO, albeit before the Supreme Court's decision in *H.J. Inc.,* is *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Delta Truck, an International Harvester dealer, alleged that International Harvester, J.I. Case Co., and Tenneco, Inc. had committed numerous predicate acts of wire and mail fraud in connection with the acquisition of International Harvester by Case and Tenneco. The district court dismissed the complaint. This court affirmed, focusing on the concept of continuity as incorporated in the enterprise element of RICO. The court stated:

> Delta has attempted to state a RICO claim by alleging multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction. This claim fails to state a RICO cause of action as a matter of law because the pleadings do not assert that the corporate defendants posed a continuous threat as a RICO person. Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor.

*Id.* at 244.

It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO. *Burzynski, Calcasieu,* and *Delta Truck* make clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a "pattern of racketeering activity" has not been shown. In this case, the alleged predicate acts occurred during the production and airing of *PrimeTime* broadcasts concerning Tilton and his Church. The alleged acts were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject. We agree with the district court that the Church has failed to plead a "continuity of racketeering activity, or its threat." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902.[4]

The Church alternatively contends that it is ABC's regular pattern of conducting business to use illegal means to further its TV production, citing to newspaper reports and to several lawsuits brought by parties dissatisfied with their portrayal in ABC news programs. However, in the case whose facts are most similar to those present here, the district court found that the plaintiff failed to establish continuity and dismissed the RICO claims. *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 887 F.Supp. 811, 819-20 (M.D.N.C.1995). Pleading the mere existence of lawsuits is not the same as pleading the facts that demonstrate predicate illegal acts as the defendant's regular way of doing business. The Church has not in this respect sufficiently alleged a continued threat of illegal activity by ABC.

---

[4]The law in other circuits might have allowed this case to proceed further. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290 (7th Cir.1992) (where defendant used extortion every time it wished to accomplish a goal in dealing with plaintiff, a pattern could be shown); *Ticor Title Ins. Co. v. Florida,* 937 F.2d 447 (9th Cir.1991) (three forgeries within thirteen month period suggests a regular way of conducting business); *United States v. Busacca,* 936 F.2d 232 (6th Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991) (where defendant misappropriated money whenever an expense was incurred, a pattern was established); *Ikuno v. Yip,* 912 F.2d 306 (9th Cir.1990) (pattern requirement met with the filing of two allegedly false annual reports). The precedents of this circuit concerning continuity are consistently different from these cases.

## C. Section 1985(3) Claim

The Church contends it properly pled a claim under 42 U.S.C. § 1985(3) based on the animus of defendants toward the Church's religious doctrines and its First Amendment rights. To state a claim under section 1985(3), a complaint must allege:

> (1) a conspiracy of two or more person; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Deubert v. Gulf Federal Savings Bank,* 820 F.2d 754, 757 (5th Cir.1987). Essential to the claim, however, is that the conspiracy be motivated by racial animus. *See Green v. State Bar of Texas,* 27 F.3d 1083, 1088 n. 8 (5th Cir.1994); *Deubert,* 820 F.2d at 757; *Rayborn v. Mississippi State Bd. of Dental Examiners,* 776 F.2d 530, 532 (5th Cir.1985). We decline the Church's invitation to extend the reach of section 1985(3) to include conspiracies motivated by religious, as opposed, to racial animus. The district court properly dismissed this claim.

## D. Opportunity to Cure Pleadings

The Church contends that at a minimum it should be allowed to amend its pleadings to cure any deficiencies in its RICO claim, arguing that the district court gave no opportunity to replead after concluding that the Church failed to plead a RICO pattern. Although leave to amend should be freely granted, we review the district court's refusal to allow amendment only for abuse of discretion. *Robertson v. Plano City,* 70 F.3d 21, 22 (5th Cir.1995); *Wheat v. Mass,* 994 F.2d 273, 277 (5th Cir.1993).

The Church's RICO claim was contained in its First Amended Complaint, its Second Amended Complaint, which the district court refused to accept, and its Third Amended Complaint, which the district court accepted. Further, the Church filed two Amended RICO Case Statements. The Church was given ample opportunity to plead its RICO claim. The district court did not abuse its discretion in denying the Church an opportunity to replead.

## III. CONCLUSION

Having decided that the Church failed to state a claim under RICO or § 1985(3), we do not

reach appellees' *res judicata* arguments.  The judgment of the district court is AFFIRMED.