George DALE, et al.,

v.

ALA ACQUISITIONS, INC., et al.

No. CIVA300CV359LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 16, 2002.

---

C. Philip Curley, Alan F. Curley, Cynthia H. Hyndman, Robinson, Curley & Clayton, P.C., Chicago, IL, Charles Greg Copeland, Robert C. Richardson, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for plaintiffs.

---

### *MEMORANDUM OPINION AND ORDER*

TOM S. LEE, Chief Judge.

This case is before the court on the motion of defendants *American Operations Corporation (AOC)* and *Michelle V. Field* to dismiss pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure. Plaintiffs *George Dale, et al.* have responded in opposition to the motion. The court, having considered the memoranda and submissions of the parties, along with other pertinent authorities, concludes that the motion should be denied.

The underlying facts of this case have been previously recounted in *Dale v. Frankel*, 131 F.Supp.2d 852, 854–55 (S.D.Miss.2001); however, the court repeats the essential background to provide the instant motion with context. According to plaintiffs, this case arises out of an alleged scheme masterminded by Martin Frankel to defraud seven insurance companies out of more that $200 million. This alleged scheme involved many individuals and entities, including defendants AOC and Field. Plaintiffs, five court-appointed receivers for the insurance companies allegedly injured by the scheme to defraud,[1] filed suit alleging that more than seventy defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. (2000), along with various state laws during the course of the scheme.

Specifically, plaintiffs allege that AOC and Field violated federal wire and mail fraud statutes giving rise to the instant civil action, which was filed pursuant to the RICO civil liability section, codified in 18 U.S.C. § 1964. In plaintiffs' first amended complaint, they allege the following facts concerning AOC and Field:

85. In March 1999, Michelle Field was an employee and agent of AOC. Frankel, using the alias "David Rosse," met with Field at his home in Connecticut. At the meeting, Frankel told her that he was the owner of the Insurance Companies, which were under regulatory scrutiny in Tennessee and Mississippi. He explained that he wanted to buy hospitals in those states to create good will with the state regulators and eliminate the regulatory problems.

86. Frankel hired Field and AOC to find a hospital for sale and market St.

---

1. Plaintiffs are also the directors and/or commissioners of insurance for Mississippi, Tennessee, Missouri, Oklahoma and Arkansas.

Francis [of Assisi Foundation to Serve and Help the Poor and Alleviate Suffering], as the proposed acquiring entity, to Tennessee and Mississippi state officials. Frankel appointed Field a Vice President of St. Francis, although she understood this to be "on paper only." Frankel then wired $125,000 to AOC from the Bloomfield account at Banque SCS Alliance in Switzerland.

87. Field knew that Frankel was the source of money for St. Francis and that Frankel alone controlled the activities of St. Francis. Despite this knowledge, Field and AOC created brochures and multi-media presentations containing misrepresentations about St. Francis, including that St. Francis' funds came from a Vatican foundation and other Roman Catholic entities, that Field was the properly-appointed Vice President of St. Francis, that St. Francis was controlled by a Board of Trustees, rather than by Frankel alone, and that St. Francis' investments were controlled by an "investment advisory committee," rather than by Frankel alone.

88. Field and AOC made these misrepresentations to Tennessee state officials and to the Board of Directors of East Tennessee Children's Hospital to attempt to convince the Board and the state officials to approve the proposed sale of East Tennessee Children's Hospital to St. Francis. In addition, Field and AOC knew similar misrepresentations had been and were being made to insurance regulators. Discussions concerning the proposed hospital acquisition were ongoing when Frankel fled the United States in May 1999.

■ Defendants AOC and Field[2] have responded to the suit by filing the instant motion to dismiss, arguing that plaintiffs' claims against them should be dismissed because this court lacks personal jurisdiction and plaintiffs have failed to state a claim upon which relief can be granted.[3] The court will address each of defendants' arguments in turn.

■ The court initially turns to defendants' argument that the court lacks personal jurisdiction over them. This court has addressed this argument three prior times as it applied to other defendants, most recently in a memorandum opinion and order entered on this date, and in each opinion, the court concluded that it has personal jurisdiction over the defendants in question. *See Dale*, 131 F.Supp.2d at 861; *Dale v. Frankel*, 131 F.Supp.2d 852 (S.D.Miss.2001); *Dale v. ALA Acquisitions I, Inc.*, Civil Action No. 3:00CV359LN (S.D.Miss. April 16, 2002). The court based these decisions, at least in part, on RICO's nationwide service of process provision, 18 U.S.C. § 1965(b). Section 1965(b) nationwide service of process is proper when it would serve the ends of

---

**2.** For the sake of brevity, the court will refer hereafter to AOC and Field as simply the "defendants."

**3.** Defendants also argue that plaintiffs have failed to plead their fraud claims with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. The Fifth Circuit has stated that the rule requires that plaintiffs plead the " 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Williams v. WMX Technologies,*

*Inc.*, 112 F.3d 175, 177 (5th Cir.1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994)). Applying this rule to plaintiffs' claims against defendants, the court concludes that the Rule 9(b) requirements have been met. However, the court notes that even if it had determined that Rule 9(b) had not been satisfied, the proper relief would not have been dismissal because plaintiffs should be provided with an opportunity to amend their complaint. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir.2000).

justice, and this requirement is met when defendants have minimum contacts with the United States,[4] at least one defendant is subject to personal jurisdiction in the forum state, and no other forum exists in which to adjudicate all of the RICO claims. *Id.* Because plaintiffs have made a prima facie showing that defendants are residents of the United States and Frankel is subject to personal jurisdiction in Mississippi, along with the fact that defendants have not shown that there exists an alternative forum with jurisdiction to adjudicate the entire case, the ends of justice permit this court's exertion of personal jurisdiction over defendants. *Id.*

In the alternative, defendants posit that the court should dismiss plaintiffs' claims because they have failed to state a claim upon which relief can be granted. As the parties are well aware, a motion to dismiss for failure to state a claim is generally looked upon with disfavor and is rarely granted. *Shipp v. McMahon*, 234 F.3d 907, 911 (5th Cir.2000); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). In evaluating such a motion, the court must accept all facts pled in the complaint as true and liberally construe such facts in the light most favorable to plaintiff. *Shipp*, 234 F.3d at 911; *Kaiser*, 677 F.2d at 1050. "The district court may not dismiss a complaint under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Shipp*, 234 F.3d at 911 (citing *Conley v. Gibson*, 355 U.S. 41, 45–

46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Further, the court will not look outside of the facts contained in the pleadings to determine if the motion to dismiss is proper. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). The standard may be summarized as follows: "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey v. Texas A. & M. Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357, at 601 (1969)).

Defendants first argue that plaintiffs' claim of aiding and abetting fraud does not exist under Mississippi law and should therefore be dismissed. Plaintiffs respond, arguing that at the present time, it is not clear that Mississippi law will govern this suit. Further, plaintiffs argue that even if Mississippi law does apply, the Mississippi Supreme Court has not explicitly ruled that such a claim does not exist.

■■■ "The conflict of law rules of the state in which the district court is located are to be used in determining the applicable law." *Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1324 (5th Cir.1995). Mississippi courts have adopted the "most substantial relationship" rule in determining which state's law will apply to particular claims. *Id.* Applying this rule to tort actions, Mississippi courts have applied the factors contained in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws. *Id.*

---

4. Defendants argue that in *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, the Fifth Circuit expressed its misgivings concerning the rule that "'when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is wheth-

er the defendant has had minimum contacts with the United States.'" 97 F.3d 822, 826 (5th Cir.1996) (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir.1994)). Notwithstanding these misgivings, this rule remains the law of the Fifth Circuit, and this court will apply it accordingly. *Busch*, 11 F.3d at 1258.

In the present case, it is unclear whether Tennessee or Mississippi law will apply to the aiding and abetting claim because defendants' alleged wrongful conduct took place in both states; however, such a determination is unnecessary because the claim is viable under the law of either state. Tennessee explicitly recognizes the tort of aiding and abetting fraud as provided for in Restatement (Second) of Torts § 876(b). *See Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F.Supp.2d 785, 795 (W.D.Tenn.1998) (stating that "Tennessee has adopted the Restatement of Torts § 876(b) theory of aiding and abetting, under which the plaintiff must show that 'the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts' ") (citing *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn.1978)). Moreover, while the Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud, this court predicts that such a claim is viable under Mississippi law.

The Fifth Circuit has directed federal courts to consider the following factors in forecasting how a state court would rule: (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir.1998). The court went on to note that without " 'evidence to the contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so.' " *Id.* (quoting *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 398 (5th Cir.) (*en banc* ), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986)).

Applying these factors, the court first notes that Mississippi has held a right of action exists for civil conspiracy, which is one of the torts provided for in Restatement § 876; however, the court did not explicitly cite § 876. *Roussel v. Hutton*, 638 So.2d 1305, 1315 (Miss.1994). *See also Stacy v. Aetna Cas. & Sur. Co.*, 484 F.2d 289, 292–93 (5th Cir.1973) (holding that absent a Mississippi case directly on point, the favorable adoption of a section of the Restatement of Torts indicates that the Mississippi Supreme Court would likewise adopt a related section). Further, the majority of jurisdictions that have addressed the validity of a claim for aiding and abetting under § 876(b) have held that such a claim exists.[5] Therefore, Mississippi's

---

5. Of the jurisdictions that have addressed § 876(b), twenty-eight have adopted a claim for aiding and abetting in some context. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust*, 201 Ariz. 474, 38 P.3d 12, 23 (2002); *Saunders v. Superior Court*, 27 Cal.App.4th 832, 33 Cal.Rptr.2d 438, 446 (1994); *Nelson v. Elway*, 971 P.2d 245, 249–50 (Colo.Ct.App. 1998); *Feen v. Benefit Plan Adm'rs, Inc.*, 2000 WL 1398898, * 10–11 (Conn.Super.Ct. Sept.7, 2000); *Pipher v. Burr*, No. C.A. 96C–08–011, 1998 WL 110135, * 9–10 (Del.Super.Ct. Jan.29, 1998); *Halberstam v. Welch*, 705 F.2d 472, 477–78 (D.C.Cir.1983); *Tew v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1551, 1568–69 (S.D.Fla.1990); *Sanke v. Bechina*, 216 Ill.App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212, 1218–19 (1991); *Heick v. Bacon*, 561 N.W.2d 45, 51–52 (Iowa 1997); *Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D. 379, 386 (D.Kan.1998); *Hart Enters., Inc. v. Cheshire Sanitation, Inc.*, No. 98–416–P–H, 1999 WL 33117189, * 3 (D.Me. Feb.22, 1999); *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038,

adoption of the related and analogous tort of civil conspiracy, coupled with the majority rule regarding 876(b), persuades this court that Mississippi would recognize a claim of aiding and abetting fraud, foreclosing dismissal for failure to state a claim.

 Defendants further argue that plaintiffs have failed to state a claim against them under RICO. Plaintiffs have alleged that defendants are liable under RICO pursuant to 18 U.S.C. § 1962(c) and (d). Generally, to state a prima facie claim under RICO, plaintiffs must allege that there is " '(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.' " *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 439 (5th Cir.2000) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988)). In addition to these requirements, plaintiffs must also have standing to sue pursuant to 18 U.S.C. § 1964(c). *Crawford Arms. Inc. v. Waste Mgmt. of Miss., Inc.,* 23 F.Supp.2d 676, 678–79 (S.D.Miss.1998). Such standing is conferred if plaintiffs have been injured in their business or property "by reason" of the conduct constituting a RICO violation. *Id.* at 679 (citing *Sedima, S.P.R.L. v. Im-rex Co.,* 473 U.S. 479, 495–97, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985)). Defendants argue that plaintiffs have failed to state RICO claims because they do not allege either a "pattern of racketeering activity" or an injury "by reason" of such a pattern.

 Plaintiffs argue that a "pattern of racketeering activity" has been pled based on defendants' alleged violations of 18 U.S.C. §§ 1341 and 1343, the federal wire and mail fraud statutes, respectively. Under RICO, racketeering activity is defined as two or more predicate acts, which include acts of wire and mail fraud. 18 U.S.C. § 1961(1)(B) & (5); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir.1996). Defendants recognize that plaintiffs have alleged numerous instances of wire and mail fraud, but they contend that none of these instances can be attributed to them. To maintain a claim for wire fraud, plaintiffs must show that defendants participated in a scheme to defraud involving the use of interstate wires for the purpose of executing the scheme, resulting in some intended harm. *United States v. Richards,* 204 F.3d 177, 207 (5th Cir.2000). Similarly, to establish a claim for mail fraud, plaintiffs must demonstrate that defendants were

1049 (1995); *Kurker v. Hill,* 689 N.E.2d 833, 837 (Mass.App.Ct.1998); *Casino Res. Corp. v. Harrah's Entm't, Inc.,* No. 98–2058ADM/AJB, 2002 WL 480968, * 13 (D.Minn. March 22, 2002); *Joseph v. Marriott Int'l, Inc.,* 967 S.W.2d 624, 629–30 (Mo.Ct.App.1998); *Invest Almaz v. Temple–Inland Forest Prods. Corp.,* 243 F.3d 57, 82–82 (1st Cir.2001) (New Hampshire); *Herman v. Coastal Corp.,* 348 N.J.Super. 1, 791 A.2d 238, 253 (2002); *GCM, Inc. v. Ky. Cent. Life Ins. Co.,* 124 N.M. 186, 947 P.2d 143, 147–48 (1997); *Centennial Textiles, Inc. v. Penn. Textile Corp., Inc.,* 227 B.R. 606, 611 (Bkrtcy.S.D.N.Y.1993); *Dow Chemical Co. v. Mahlum,* 114 Nev. 1468, 970 P.2d 98, 112–13 (1998); *McMillan v. Mahoney,* 99 N.C.App. 448, 393 S.E.2d 298, 300 (1990); *Aetna Cas. & Sur. Co. v. Leahey Constr. Co., Inc.,* 219 F.3d 519, 533–34 (6th Cir.2000) (Ohio); *Granewich v. Harding,* 329 Or. 47, 985 P.2d 788, 792–93 (1999); *Groff v. Maurice,* C.A. No. 86–3808, 1993 WL 853801, *3 (R.I.Super. April 7, 1993); *Future Group, II v. Nationsbank,* 478 S.E.2d 45, 50 (S.C. 1996); *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis,* 21 F.Supp.2d 785, 795 (W.D.Tenn.1998); *Estate of Hough v. Estate of Hough,* 205 W.Va. 537, 519 S.E.2d 640, 648–49 (1999); *Winslow v. Brown,* 125 Wis.2d 327, 371 N.W.2d 417, 421–23 (1985). Moreover, courts in three other states have held that the viability of such claims remains an open question. *See Unity House, Inc. v. N. Pac. Invests., Inc.,* 918 F.Supp. 1384, 1390 (D.Haw.1996); *Daniel Boone Area Sch. Dist., v. Lehman Bros., Inc.,* 187 F.Supp.2d 400, 413 (W.D.Pa.2002); *Shinn v. Allen,* 984 S.W.2d 308, 310 (Tex.App.1998).

involved in a scheme to defraud involving the use of mails for the purpose of executing the scheme. *United States v. McClelland,* 868 F.2d 704, 706 (5th Cir.1989).

▮ However,

[a] defendant need not personally have made the communication on which the wire [and mail] fraud [counts are] based nor have directed that [they] be made. "The test to determine whether a defendant caused [interstate wire and mail instrumentalities] to be used is whether the use was reasonably foreseeable." *United States v. Massey,* 827 F.2d 995, 1002 (5th Cir.1987) (interpreting the mail fraud statute). For a defendant to be convicted of wire [or mail] fraud, it is sufficient that the defendant could reasonably have foreseen the use of the wires [or mails]. . . .

*Richards,* 204 F.3d at 207.[6] Therefore, for the alleged wire and mail fraud to be attributable to defendants, it is sufficient that defendants could have reasonably foreseen such violations. Plaintiffs argue that they have pled as much, and the court agrees.

In plaintiffs' complaint, they allege that:

275. In 1998 and 1999, Field and AOC knowingly conducted, participated in, controlled, manipulated or directed the enterprises' affairs through a pattern of racketeering activity, consisting of violations of the federal mail and wire fraud statutes, in violation of 18 U.S.C. § 1962(c).

276. Specifically, Field and AOC implemented Frankel's scheme to defraud by assisting Frankel in his attempts, through St. Francis, to acquire hospitals, and by causing statements Field and AOC knew to be false to be made to state officials and others to conceal Frankel's control and involvement in the proposed acquisition of those hospitals, thereby assisting Frankel in his efforts to maintain and acquire control over insurance companies.

277. Field and AOC knew that the U.S. Postal service, private or commercial interstate carriers, and interstate wires and telephone lines would be used in furtherance of Frankel's scheme to defraud, as described in paragraph 112 above,[7] in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

Construing the complaint in the light most favorable to plaintiffs, the court concludes that plaintiffs have sufficiently pled that defendants were involved in a scheme to defraud using both the interstate wires and mails for the purpose of executing a scheme that would result in some intended harm. Consequently, plaintiffs have adequately pled the requisite predicate acts to maintain their RICO claims against defendants.

▮ However, to establish a *pattern* of racketeering activity, plaintiffs must also "show that the racketeering predicates are *related,* and that they amount to or pose a threat of *continued criminal activity.*" *Sawyer,* 90 F.3d at 122 (emphasis in original) (citing *H.J. Inc. v. Northwestern Bell Tel., Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)). In *Sawyer,* the Fifth Circuit explained that in *H.J. Inc.,* the United States Supreme Court provided guidelines for determining if the prerequisites of "relatedness" and "continued criminal activity" are met. Citing *H.J. Inc.,* the *Sawyer* court stated,

---

**6.** In a footnote, the *Richards* court noted that "[b]ecause the language of the mail fraud and wire fraud statutes are so similar, cases construing one are applicable to the other." *Id.* at 207 n. 13.

**7.** Paragraph 112 of the complaint specifically lists various wire and mail transactions that are alleged to have occurred.

[t]he element of relatedness is established if the acts have the same or similar purposes, results, participants, victims, or methods of commission. To establish continuity, plaintiffs must prove continuity of racketeering activity, or its threat. This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that by its nature projects into the future with a threat of repetition. A closed period of conduct may be demonstrated by proving a series of related predicates extending over a substantial period of time. An open period of conduct involves the establishment of a threat of continued racketeering activity. This may be shown where there exists a specific threat of repetition extending indefinitely into the future, or where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business. The [United States Supreme] Court stated that in enacting RICO, Congress was concerned with long-term criminal conduct.

*Sawyer*, 90 F.3d at 122 (internal quotation and citations omitted) (quoting and citing *H.J. Inc.*, 492 U.S. at 241–43, 109 S.Ct. at 2901–03). Further, the First Circuit has noted that a scheme that could potentially go on forever absent detection can constitute an open-ended continuity. *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir.2000) (citing *H.J. Inc.*, 492 U.S. at 250, 109 S.Ct. at 2906).

■ Applying these guidelines to the present case, the court concludes that plaintiffs have adequately pled their RICO claims against defendants to establish that the alleged predicate acts of wire and mail fraud are related and constituted a threat of continued criminal activity. The complaint sufficiently pleads that the violations were related in that the violations were part of all defendants' alleged scheme to defraud the insurance companies. Moreover, plaintiffs specifically allege that the defendants' conduct constituted a threat of continued criminal activity, stating,

278. The uses of the mails and wires in furtherance of the scheme to defraud amounted to continuing criminal activity and thus constituted a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(1)(b)(5), in violation of 18 U.S.C. § 1962(c).

279. The uses of the mails and wires described in paragraph 112 above in furtherance of the scheme to defraud was the regular way of conducting the ongoing activities of Field and AOC and would have continued indefinitely, had the insurance regulators not taken control of the Insurance Companies.

As the First Circuit stated in *Efron*, activity that would have continued but for detection satisfies the continuity requirement. Accordingly, the court concludes that plaintiffs have adequately pled a pattern of racketeering against defendants sufficient to survive a motion to dismiss for failure to state a claim.

■ Defendants also argue that plaintiffs have not alleged an injury sufficient to confer standing under RICO, pursuant to the civil RICO standing requirement, codified in 18 U.S.C. § 1964(c). As stated earlier, standing is only conferred to persons who have been injured "by reason of" the alleged predicate acts. *Crawford*, 23 F.Supp.2d at 679 (citing *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275). The Fifth Circuit has held that "a person will be considered injured 'by reason of' a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury." *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir.1989).

Applying this standing requirement to plaintiffs' complaint, the court concludes

that for purposes of a motion to dismiss, plaintiffs have sufficiently pled injuries that allegedly occurred "by reason of" defendants' predicate acts. The complaint clearly cites numerous instances of wire and mail fraud, which the court has held sufficient to constitute the alleged predicate acts, resulting in injuries to the various insurance companies represented by the receivers. The court is satisfied that plaintiff has adequately pled that these alleged injuries were both factually and legally caused by defendants' predicate acts. Accordingly, the court concludes that plaintiffs' RICO claims are sufficiently pled to survive defendants' motion to dismiss.

For the foregoing reasons, it is ordered that defendants' motion to dismiss for lack of jurisdiction and failure to state a claim is denied.

SO ORDERED this the 16th day of April 2002.