# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2020

Lyle W. Cayce
Clerk

No. 19-11391

Jacob Davis,

*Plaintiff—Appellant*,

*versus*

City of Alvarado; City of Alvarado Police Department;
Brad Anderson, *Police Chief*; Solomon Omotoya, *Police Officer*;
Matthew Dill, *Police Officer*; Chad Marshall, *Police Officer*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-463

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

Jacob Davis has brought claims pursuant to 42 U.S.C. § 1983[1] against
the City of Alvarado, the Alvarado Police Department ("APD"), Chief of

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] "Section 1983 provides that 'every person who, under color of any [law],' deprives another of 'any rights, privileges, or immunities secured by the Constitution and

No. 19-11391

Police Brad Anderson, Officer Solomon Omotoya, Officer Matthew Dill, and Officer Chad Marshall. After this case was removed to federal court and the complaint was amended three times, the district court dismissed Davis's claims under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. Davis appeals the dismissal of his claims. He also appeals the denial of leave to file a fourth amended complaint. For the reasons that follow, we AFFIRM in all respects.

## I. FACTS & PROCEDURAL HISTORY

In November 2018, Davis was towing a trailer through Alvarado, Texas on his way to South Dakota. As Davis stopped in Alvarado to refuel, Dill and Omotoya approached him. The police officers then inquired about the ownership of the trailer, whether it had a Vehicle Identification Number ("VIN"), and if Davis had any "papers" for it. Davis responded that he was the owner, produced a registration receipt for it, and informed the officers that he knew of no VIN for the trailer because it was "homemade." Dill informed Davis that if the trailer did not have a VIN, it was presumed to be stolen and he would have to bring it to the police station. Before escorting Davis to the station, Dill and Omotoya spent thirty minutes searching the trailer for a VIN.

After failing to locate a VIN in the trailer, the officers brought Davis to the station where they performed an additional search of the trailer. At the conclusion of the search, they told Davis that they were going to "seize the trailer." Davis protested that decision to Anderson, but Anderson declined to overturn it because Dill was the "authority on the legalities of trailers." Davis then continued on his trip to South Dakota with a borrowed trailer. A

---

laws, shall be liable to the party injured in an action at law.'" *Pikaluk v. Horseshoe Ent.*, *L.P.*, 810 F. App'x 243, 246 (5th Cir. 2020) (alteration in original) (quoting 42 U.S.C. § 1983).

month later, a justice of the peace in Johnson County notified Davis that a proceeding would be held to determine "the right to possession of the [trailer]."

Davis requested that the proceeding be held on January 22, 2019. Yet on that day Davis filed his Section 1983 claims in Johnson County district court. Davis requested damages and declaratory relief. The justice of the peace then stayed his proceeding so that Davis's case could go forward. Davis's action was then removed to federal court. After the district court permitted Davis to file a third amended complaint, the defendants moved under Rule 12(b)(6) to dismiss it. While the defendants' dismissal motion was pending, Davis requested leave to file a fourth amended complaint. A magistrate judge denied leave to amend and recommended that the district court dismiss Davis's claims with prejudice for failing to state a claim upon which relief can be granted. The district court adopted the magistrate judge's recommendation and dismissed Davis's claims. Davis timely appealed.

## II. STANDARD OF REVIEW

"We review de novo the district court's decision to dismiss a complaint under Rule 12(b)(6)." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of [the alleged misconduct]." *Twombly*, 550 U.S. at 556. When ruling on a Rule 12(b)(6) motion, "we may take judicial notice of matters of public record." *Ruiz*, 851 F.3d at 468.

The denial of a motion to amend is reviewed for abuse of discretion. *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). Federal Rule of Civil Procedure 15(a) "requires a trial court to 'freely give leave when justice so requires.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (quoting FED. R. CIV. P. 15(a). Thus, the "district court[] must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). That presumption, however, may be overcome if the district court determines that there is a "substantial reason" for denying leave, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).

## III. DISCUSSION

### *A. Rule 12(b)(6) Motion*

Davis appeals the dismissal of his claims that defendants violated his Fourth Amendment rights by illegally stopping him as well as by searching and seizing his trailer.[2]

As an initial matter, we need not reach Davis's arguments regarding his claims against Alvarado, APD, Anderson, and Marshall. With respect to

---

[2] In his third amended complaint, Davis claimed that the defendants violated his Eighth Amendment rights by depriving him of his trailer. To the extent Davis intends to

No. 19-11391

Alvarado and APD, Davis has failed to address the district court's reasons for dismissing his claims against them, namely that Davis did not adequately plead municipal liability against Alvarado under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and that APD, as a division of Alvarado, is not an entity capable of being sued. Since Davis "does not address the district court's rationale for dismissing his 42 U.S.C. § 1983 action [against Alvarado and APD], he has waived any such challenge he could bring." *Birgans v. Louisiana*, 411 F. App'x 717, 718 (5th Cir. 2011) (citing *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987)). As to Anderson and Marshall, the district court noted Davis did not address their arguments for dismissal on the merits. Davis has therefore abandoned his claims against them. *See Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017). Because Davis waived his arguments against Alvarado and APD as well as abandoned his claims against Anderson and Marshall, we affirm the dismissal of Davis's claims against those defendants.

Regarding the remaining defendants, Dill and Omotoya, Davis first argues that they did not have a "reasonable suspicion" to stop him. But the officers did not require reasonable suspicion to stop Davis because the encounter was not a 'seizure' that falls within the scope of the Fourth Amendment. "The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Washington*, 340 F.3d 222, 226 (5th Cir. 2003) (alteration in original) (quoting U.S. Const. amend. IV). An individual is seized for the purposes of the Fourth Amendment when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he

---

appeal the dismissal of that claim, he has abandoned it by not briefing the issue. *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010).

was not free to leave." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In accordance with this rule, we have recognized "three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. Unit B 1982).

The facts as alleged do not plausibly suggest that a reasonable person would not have felt free to leave the initial part of Davis's encounter with Dill and Omotoya. The officers approached Davis when he was already stopped. They never physically tried to prevent Davis from leaving. And Davis never indicated a desire to end the encounter but continued to respond to the officers' questions. In short, Davis does not aver any facts to suggest that Dill and Omotoya coerced him into answering their questions. Consequently, the officers did not need reasonable suspicion to stop Davis because the stop did not fall within the ambit of the Fourth Amendment.

Next, Davis argues that Dill and Omotoya had "no reason" to search or seize his trailer. We disagree. As to the search:

> We repeatedly have held that the examination of a vehicle for the purpose of inspecting the VIN plates or identification-number inscriptions is not a search for purposes of the Fourth Amendment. An inspection by police officers is not a search merely because the police must open the door of the vehicle in order to examine the VIN plate . . . . [W]e found such inspections were justified because the officers had legitimate reasons to suspect criminal activity was afoot.

*United States v. Forrest*, 620 F.2d 446, 454–55 (5th Cir. 1980) (citations omitted). The officers had a legitimate reason to suspect that the trailer was

No. 19-11391

stolen since Davis admitted that the trailer did not have a VIN. Hence, Dill and Omotoya justifiably searched the trailer.

Under Texas law, the police "may seize a vehicle . . . without a warrant if [an] officer has probable cause to believe that the vehicle . . . has had the serial number removed, altered, or obliterated." Tex. Transp. Code Ann. § 501.158(a)(2).[3] The United States Supreme Court has observed that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . ." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (alteration in original) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). When the officers did not find a VIN inside the trailer, they had a reasonable ground to believe that the VIN had been removed or destroyed. Accordingly, the officers were permitted to seize Davis's trailer. *See York v. State*, 373 S.W.3d 32, 34 (Tex. 2012) ("But the trailer had no vehicle identification number (VIN), so Martinez impounded it, as a peace officer is authorized to do by Texas law, which then permits the seized vehicle to be treated as stolen for purposes of custody and disposition." (citing § 501.158)).

Davis tries to distinguish *York* on the ground that the trailer in that case was manufactured, while his trailer is homemade. But this is a distinction without a difference. The import of Davis's argument is that the officers could not have found probable cause to seize the trailer since homemade trailers do not need to have VINs. Yet Texas law requires all trailers—manufactured or otherwise—to have VINs. *See* § 501.033 (stating that, if a VIN "was never assigned, the department shall assign an identification number to a . . . trailer . . . ."). Therefore, Dill and Omotoya were still justified in seizing the trailer after they could not locate a VIN inside it.

---

[3] Trailers are defined as vehicles under Texas law. *See* § 501.002(29).

No. 19-11391

In sum, we hold that the officers did not violate Davis's Fourth Amendment rights when they searched and seized his trailer.[4] [5]

*B. Motion for Leave to Amend*

The magistrate judge determined that allowing Davis to file a fourth amended complaint would be futile. We agree.

"Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Marucci Sports*, 751 F.3d at 378. "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.* Therefore, we review the proposed amended complaint to determine whether it states a plausible claim for relief. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

In his proposed fourth amended complaint, Davis alleges that Dill and Marshall conspired with a clerk of the Johnson County justice of the peace, Christi Moss, to "defraud [Davis] and others similarly situated of their trailers by seizing the trailers, then issuing criminal citations and instituting forfeiture proceedings . . . ." He brings new claims against the above-captioned defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a) and (c).

"Regardless of subsection, RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control

---

[4] To the extent Davis also challenges the district court's denial of his request for declaratory relief, we conclude that the district court did not err in doing so because a plaintiff is not entitled to a declaratory judgment when a court must dismiss his underlying claims.

[5] For this reason, we do not reach the magistrate judge's recommendation that Dill and Omotoya are entitled to qualified immunity on Davis's Fourth Amendment claims.

of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "'Racketeering activity' consists of two or more predicate criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *Sawyer*, 90 F.3d at 122). "The predicate acts can be either state or federal crimes." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 262 (5th Cir. 2002).

To begin, the magistrate judge correctly determined that Alvarado and APD are not proper defendants in a RICO suit. *See Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015) ("First, RICO requires demonstrating an underlying criminal act, which entails a mens rea requirement that a governmental entity cannot form.").

Moreover, the magistrate judge rightly concluded that Davis failed to adequately plead facts suggesting Dill, Omotoya, Anderson, and Marshall participated in racketeering activity. As the magistrate judge noted, "The only predicate acts to which [Davis] specifically points are the forfeiture proceedings themselves. Accordingly, he must plausibly allege that such proceedings violate[d] either state or federal criminal law."

Davis first alleges that the proceedings violated Texas Penal Code Section 37.10, which prohibits tampering with government records. Assuming arguendo that the proceedings did in fact violate Section 37.10, RICO predicates must be acts or threats "involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . ., which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Tampering with government records is therefore not a qualifying act or threat.

No. 19-11391

Davis further avers that the proceedings violated 18 U.S.C. § 1341, which prohibits mail fraud. While mail fraud may serve as a RICO predicate, *id.* § 1961(1)(B), Davis has not plausibly alleged facts supporting two instances of such fraud. Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 298 (5th Cir. 2011) (alteration in original) (quoting *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999)); *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Davis avers that "Dill and Marshall devised a scheme to cause the Justice of the Peace Court #3 of Johnson County to issue notices that the personal property was 'ordered seized by the court' when no such order had been issued and then to have those 'Notices' mailed via the United States Mail to those persons or entities whom these Defendants identified as possibly having an interest in the seized property." This allegation does not sufficiently meet Rule 9(b)'s heightened pleading standard.

Finally, Davis alleges that the forfeiture proceedings violated a Texas provision regarding the city attorney's role in forfeiture proceedings. That provision, TEX. CODE CRIM. PRO. 59.01(1), simply defines the term "attorney representing the state." Since the provision does not discuss any acts or threats that qualify as RICO predicates, Davis's reliance on it is misplaced.

In sum, we conclude that Davis has not plausibly alleged a pattern of racketeering activity. Since Davis has failed to state a RICO claim, we hold that the district court did not abuse its discretion in denying Davis leave to amend a fourth time. *See Marucci Sports*, 751 F.3d at 379 (5th Cir. 2014) ("Because two prior amendments were granted and allowing a third would

No. 19-11391

have been futile, we conclude that the district court did not abuse its discretion by denying Marucci's motion to amend.").

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.