**[J-44-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

DAVID H. MARION, RECEIVER FOR
BENTLEY FINANCIAL SERVICES, INC.
AND ENTRUST GROUP,

               Appellees

               v.

BRYN MAWR TRUST COMPANY,

               Appellant

:  No. 72 MAP 2021
:
:  Appeal from the Order of the
:  Superior Court dated February 16,
:  2021 at No. 2470 EDA 2018
:  Vacating the Judgment of the
:  Montgomery County Court of
:  Common Pleas, Civil Division, dated
:  July 26, 2018 at No. 2003-19232
:  and Remanding for a new trial.
:
:  ARGUED:  September 13, 2022
:

**OPINION**

**JUSTICE DOUGHERTY**               **DECIDED:  January 19, 2023**

We granted limited discretionary review to consider whether to recognize a cause of action for aiding and abetting fraud and, if so, to determine the scienter requirement for this tort.  For the reasons detailed below, we hold aiding and abetting fraud is a cognizable claim under Pennsylvania law, and the required state of mind is actual knowledge of the fraud.  Accordingly, the Superior Court's decision is affirmed in part and reversed in part, and the case is remanded to the trial court for a new trial.

**I.**

Robert Bentley (Bentley) was a broker of certificates of deposits (CDs).  He operated his business through two entities: Bentley Financial Services (BFS) and Entrust

Group (Entrust). Entrust had a $2 million line of credit with Main Line Federal Savings Bank (Main Line). In 1996, Main Line terminated the line of credit, which was fully drawn, after the bank discovered Bentley had forged his accountant's signature on a document. Main Line demanded repayment of the outstanding $2 million balance. In order to pay back Main Line, Bentley sold $2 million of fake CDs. Thereafter, Bentley engaged in a Ponzi scheme in which he would sell fraudulent or fictitious CDs to new investors in order to pay off previous investors.

In 1997, as he continued to defraud investors, Bentley opened deposit and wire transfer accounts with a new bank, Bryn Mawr Trust Company (BMT). In addition, he applied to BMT for a $2 million line of credit. He subsequently withdrew his credit application, however, after BMT asked him to provide a favorable credit reference from Main Line. Bentley became one of BMT's largest customers.

In 2001, the Securities and Exchange Commission commenced an action against Bentley for his Ponzi scheme.[1] The federal court appointed David Marion (Marion) as a receiver for BFS and Entrust. In 2004, Marion initiated the present case by filing in state court a civil complaint against BMT. Marion's complaint, which he subsequently amended in 2012, raised claims of breach of fiduciary duty, breach of the Uniform Fiduciaries Act (UFA), aiding and abetting fraud, and negligence. In 2014, the trial court granted summary judgment to BMT on the claim of aiding and abetting fraud. The court noted "Pennsylvania appellate courts have not expressly recognized [aiding and abetting fraud] as a cause of action under Pennsylvania law[.]" *Marion v. Bryn Mawr Tr. Co.*, No. 03-19232, Order, Murphy, J. (C.P. Montgomery, Jan. 21, 2014).

The case proceeded to a jury trial in 2018. Marion withdrew his claim of breach of fiduciary duty at the close of his evidence. Ultimately, the jury returned a verdict for BMT.

---

[1] Bentley eventually pleaded guilty to mail fraud and bribery, and was sentenced to 55 months' imprisonment and ordered to pay $38 million in restitution.

Specifically, the jury found BMT was not negligent, and did not act in bad faith in violation of the UFA.  The trial court denied Marion's motion for post-trial relief.

Marion appealed to the Superior Court, which reversed the judgment in favor of BMT and remanded for a new trial.  Initially, the panel held the trial court erred in granting summary judgment in favor of BMT on the aiding and abetting fraud claim.  The panel noted that in opposing summary judgment, Marion argued BMT's conduct was actionable under section 876 of the Restatement (Second) of Torts (section 876), which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) OF TORTS §876 (AM. L. INST. 1979).  The panel recounted that, in *Skipworth v. Lead Indus. Ass'n*, 690 A.2d 169 (Pa. 1997), this Court found the Superior Court's interpretations of the concert of action theory of liability under section 876(a) to be "'eminently reasonable' and expressly adopted them."  *Marion v. Bryn Mawr Tr. Co.*, 253 A.3d 682, 689 (Pa. Super. 2021), *quoting Skipworth*, 690 A.2d at 175.  The panel noted that subsequently, in *Sovereign Bank v. Valentino*, 914 A.2d 415 (Pa. Super. 2006), the Superior Court upheld a cause of action for aiding and abetting fraud under section 876(b).  Thus, the panel argued, "the trial court erred in concluding that [Marion] alleged a nonexistent cause of action."  *Marion*, 253 A.3d at 689.  The panel acknowledged this Court "has not expressly recognized a claim for aiding and abetting fraud under § 876(b) (*Skipworth* addressed § 876(a))."  *Id.* at 689 n.2.  Yet, the panel reasoned, "[t]his is of no

moment here," as the Superior Court did recognize the claim in the published decision in *Sovereign Bank*, which "is binding on this panel." *Id.*

Regarding the scienter required for aiding and abetting fraud, the panel opined *Grimm v. Grimm*, 149 A.3d 77 (Pa. Super. 2016), "held that § 876(b) could apply where the defendant knew of or could reasonably foresee the underlying bad actor's misdeed." *Id.* at 690. Moreover, the panel determined *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114 (Pa. Super. 2014) "relied on the defendant's 'intentional ignorance' in concluding that the defendant knew or should have known it was participating in tortious conduct." *Id.* at 691. The panel also relied on *Resolution Tr. Corp. v. Farmer*, 823 F. Supp. 302 (E.D. Pa. 1993), which stated "the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety." *Id.*, *quoting Resolution Tr.*, 823 F. Supp. at 309. Pursuant to *Grimm*, *HRANEC*, and *Resolution Trust*, the panel concluded, "a defendant's actual knowledge of the underlying tort is not necessary to sustain a cause of action" for aiding and abetting fraud. *Id.* "Rather," the panel determined, "if the defendant knew or should have known of the underlying bad actor's misdeeds, but instead exhibited intentional ignorance, . . . the knowledge element of [the tort] is satisfied." *Id.* According to the panel, "a genuine issue of material fact existed as to whether BMT exercised intentional ignorance toward Bentley's unlawful activity." *Id.* at 693. There was also sufficient evidence, the panel held, to establish a triable issue of fact as to whether BMT provided substantial assistance or encouragement to Bentley.

In addition to reversing the dismissal of Marion's claim of aiding and abetting fraud, the panel also held the trial court erred in permitting BMT to introduce evidence of the attorneys' fees Marion incurred in his role as receiver and his decision as receiver to redeem and liquidate CDs prior to their maturity dates. *See id.* at 695-706. The panel

concluded "[t]hese errors were not harmless and permeated both the liability and damages phase[s] of the trial." *Id.* at 706. Accordingly, the panel vacated the judgment for BMT, and remanded for a new trial, "which shall include [Marion's] § 876(b) cause of action." *Id.* at 707.

## II.

BMT sought allowance of appeal, which this Court granted, limited to the following issue as stated by BMT: "Whether the Superior Court erred when it: (a) recognized a novel cause of action for aiding and abetting fraud; (b) held that actual knowledge is not required to satisfy the elements of the tort; and (c) failed to recognize that the jury's no-liability finding necessarily barred relief[?]" *Marion v. Bryn Mawr Tr. Co.*, 264 A.3d 336 (Pa. 2021) (per curiam) (alteration in original).[2] Because this issue raises pure questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Pennsylvania Env't Def. Found. v. Commonwealth*, 279 A.3d 1194, 1202 (Pa. 2022).

BMT urges this Court to reverse the panel's remand for a new trial. It argues this Court should not recognize a cause of action for aiding and abetting fraud. According to BMT, the Court has never previously recognized this claim. It contends *Skipworth* involved a claim of concert of action under section 876(a), not an allegation of aiding and abetting under section 876(b). Indeed, BMT insists "this Court expressly rejected any suggestion that it has recognized aiding-and-abetting liability under § 876(b)" in *Off. Comm. of Unsecured Creditors of Allegheny Health Educ. & Rsch. Found. v. PriceWaterHouseCoopers, LLP*, 989 A.2d 313 (Pa. 2010). Appellant's Brief at 24. BMT maintains "[t]his Court does not lightly adopt new causes of action[,]" and does so only

---

[2] The Court did not grant review of the other issue BMT raised in its allocatur petition: "Whether the Superior Court erred when it: (a) substituted its judgment for the jury's by ordering a new trial based on evidence the jury was instructed not to consider; (b) second-guessed the trial court's sound exercise of discretion; and (c) rested its decision on a view of the facts clearly contradicted by the record[?]" Petition for Allowance of Appeal at 6.

when it is "able to see with reasonable clarity the results of its decision and to say with reasonable certainty that the change will serve the best interests of society." *Id.* at 25, *quoting Cafazzo v. Cent. Med. Health Servs., Inc.*, 668 A.2d 521, 527 (Pa. 1995). Here, BMT advocates, there is no pressing need to adopt an aiding and abetting fraud claim because there are existing causes of action under Pennsylvania law that can provide adequate relief, including fraud, breach of fiduciary duty, negligence, civil conspiracy, and breach of UFA. It claims adding to this litany of liability theories "would either be duplicative or . . . risk creating doctrinal confusion[,]" and could lead to "litigation mischief" by plaintiffs in search of deep-pocketed defendants. *Id.* at 28, 30.

In the alternative, BMT argues, if this Court recognizes a cause of action for aiding and abetting fraud, it should mandate a scienter requirement of actual knowledge of the underlying fraud. BMT asserts the "plain text" of section 876(b) requires actual knowledge. *Id.* at 31, 32. It emphasizes section 876(b) uses only the word "knows," whereas other provisions in the Restatement use phrases such as "knows or has reason to know" and "knows or should know." *Id.* at 32-33 (internal quotation marks omitted). The use of the single word "knows" without any additional alternate language, BMT submits, establishes "clear[ly] that 'knows' here refers to actual knowledge, not any lesser mental state." *Id.* at 33, *quoting BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 309 (4th Cir. 2018) (alteration in original). BMT insists that, contrary to the panel's holding, "it is not enough that 'a defendant should have known' of fraud or that it 'disregarded red flags.'" *Id.* at 34, *quoting In re Brican Am. LLC*, 2015 WL 11661980, at *2 (S.D. Fla. Aug. 4, 2015) (unpublished order) (internal quotation marks omitted). It asserts the Restatement (Third) of Torts: Liability for Economic Harm §28 (section 28) confirms actual knowledge is required for aiding and abetting liability.[3] In particular, BMT

---

[3] Section 28 provides:

notes the comment to section 28 expressly states "[t]he defendant's knowledge must be actual." *Id.* at 35, *quoting* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 cmt. c (AM. L. INST. 2020). It further notes courts in at least ten other states, as well as four federal courts sitting in diversity jurisdiction, have construed aiding and abetting fraud to require actual knowledge. BMT also warns of negative policy consequences if the Court endorses a state of mind standard less than actual knowledge. Specifically, it predicts a laxer knowledge element would either compel banks and other professional organizations to adopt expensive investigative measures, the costs of which will be passed on to customers, or to leave the Pennsylvania economy entirely.

In any event, BMT claims the jury's verdict, in which it found BMT was not negligent and did not violate the UFA, precludes relief on a claim of aiding and abetting fraud, even under a "should have known" scienter standard. It acknowledges the Superior Court "invalidated the jury verdict" but insists the panel "committed legal error" in doing so. *Id.* at 45. In addition, BMT maintains the facts alleged by Marion in his complaint were insufficient to establish either the actual knowledge or substantial assistance elements of aiding and abetting fraud.

---

A defendant is subject to liability for aiding and abetting a tort upon proof of the following elements:

    (a) a tort was committed against the plaintiff by another party;

    (b) the defendant knew that the other party's conduct was wrongful;

    (c) the defendant knowingly and substantially assisted in the commission or concealment of the tort; and

    (d) the plaintiff suffered economic loss as a result.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 (AM. L. INST. 2020).

*Amicus* Pennsylvania Bankers Association (PBA) supports BMT's position. PBA argues Marion should not be permitted to pursue a cause of action for aiding and abetting fraud against BMT "under the doctrine of *in pari delicto*." PBA's *Amicus* Brief at 18.[4] It notes Marion is asserting claims against BMT in his capacity as receiver for BFS and Entrust. Thus, PBA contends, Marion "is attempting to pursue claims against [BMT] for the benefit of one group of [tortfeasors], *i.e.*, BFS and Entrust, to recover damages for the conduct of another similarly culpable [tortfeasor], *i.e.*, Bentley." *Id.* at 14. Moreover, PBA agrees with BMT that if a cause of action for aiding and abetting fraud is recognized by this Court, it should only apply when the tortfeasor has actual knowledge of the fraudulent conduct. It maintains the UFA and Uniform Trust Code call for this result, as do the principles established by sections 876(b) and 28 of the Restatement. Also, PBA insists eschewing an actual knowledge requirement would "draw financial institutions into the quagmire of litigation[,]" and would render Pennsylvania an outlier among the states that have addressed the issue. *Id.* at 8.

*Amici* Pennsylvania Coalition for Civil Justice Reform (PCCJR) and Pennsylvania Institute of Certified Public Accountants (PICPA) likewise call for reversal. PCCJR and PICPA argue a cause of action for aiding and abetting fraud "would be duplicative of the existing cause of action for fraud." PCCJR and PICPA's *Amici* Brief at 2. Moreover, they contend "the law of fraud is relatively clear and predictable[,]" and "[a] novel cause of action for aiding and abetting fraud would upend that well-settled law." *Id.* at 3. *Amici* assert recognition of this tort would raise "the very real possibility of abusive litigation." *Id.* at 9. They also predict it would "have terrible consequences for Pennsylvania businesses and consumers." *Id.* at 2; *see also id.* at 13 ("Recognition of a novel cause of

---

[4] The "*in pari delicto* doctrine" refers to "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *In Pari Delicto Doctrine,* Black's Law Dictionary (11th ed. 2019).

action for aiding and abetting fraud would chill legitimate commerce and harm the economy as a whole.").  With so much at stake from a policy perspective, PCCJR and PICPA argue, this Court should "defer to the General Assembly to study the need (or not) for a cause of action for aiding and abetting fraud."  *Id.* at 19.  Alternatively, echoing BMT and PBA, *amici* submit that if the Court does endorse a cause of action for aiding and abetting fraud, it should, at a minimum, require actual knowledge of the underlying fraud.  They accentuate this is the majority view among jurisdictions adopting the tort and would protect against findings of liability "based solely on hindsight bias."  *Id.* at 16.

In response, Marion argues we should affirm the panel's judgment.  He advocates for recognition of the aiding and abetting fraud cause of action.  He contends this Court "impliedly adopted" the tort in *Skipworth*.  Appellee's Brief at 3.  There, Marion explains, this Court held Superior Court decisions recognizing the concert of action theory under section 876(a) were "eminently reasonable."  *Id.* at 18, *quoting Skipworth*, 690 A.2d at 175.  Moreover, he notes the Commonwealth Court, based on *Skipworth*, endorsed a cause of action for aiding and abetting breach of fiduciary duty in *Koken v. Steinberg*, 825 A.2d 723 (Pa. Cmwlth. 2003), and the Superior Court recognized aiding and abetting fraud in *Sovereign Bank*.

Marion disputes that aiding and abetting fraud is redundant of other recognized causes of action.  He asserts fraud, civil conspiracy, negligence, breach of fiduciary duty, and violation of UFA each have distinct elements from a cause of action for aiding and abetting fraud.  Marion also dismisses the arguments that an aiding and abetting fraud cause of action would be a trap for unwitting defendants and unduly burden Pennsylvania businesses.  He insists "Pennsylvania businesses can rest easy, as '[no ]one would argue that [one] who [has] unwittingly held the door for the bank robber intended to aid or abet

through such assistance.'" *Id.* at 43, *quoting* Richard C. Mason, *Civil Liability for Aiding and Abetting*, 61 Bus. Law. 1135, 1146 (2006).

On the question of the appropriate scienter requirement for aiding and abetting fraud, Marion advocates for the panel's "intentional ignorance" standard. He acknowledges section 876(b) uses the word "knows" but insists "[n]either the text nor the Restatement's comments define the level of knowledge required." *Id.* at 25. He also argues "existing Pennsylvania precedent supports the Superior Court's holding[,]" specifically *HRANEC* and *Grimm. Id.* at 25-26, 28-29. He relies too on the federal district court decision in *Resolution Trust* cited by the panel, as well as other lower federal court cases.

Marion submits the *in pari delicto* defense raised by *amicus* PBA is waived because BMT never raised it either at trial, in the Superior Court, or before this Court. Moreover, he insists this defense is inapplicable because he is a court-appointed receiver with clean hands who has not committed any wrongdoing. Lastly, Marion argues the jury's no-liability verdict should have no bearing on whether he can pursue an aiding and abetting fraud cause of action on retrial. He notes this Court's allocatur grant was limited to the question of whether the Superior Court erred in recognizing an aiding and abetting fraud cause of action, and did not encompass the panel's additional determination Marion is entitled to a new trial based on BMT's erroneous introduction of evidence of his attorney's fees and early redemption of CDs. Given this "improper evidence[,]" he contends, the verdict was "unreliable and indelibly tainted by error." *Id*. at 48, 57.

In its reply brief, BMT notes the Court's allocatur grant included the question of "whether [] 'the jury's no-liability finding necessarily barred relief' on any aiding-and-abetting claim." Appellant's Reply Brief at 3, *quoting Marion*, 264 A.3d 336. It argues "[t]he only way for this Court to decide [this] question is to determine whether the Superior

Court's ruling overturning the no-liability verdict was erroneous." *Id.* Assessing whether the panel erred in overruling the jury's verdict, BMT asserts, is "both antecedent to and dispositive of" the question on which the Court granted review. *Id.* at 5. BMT submits the panel erred in undoing the no-liability verdict because the trial court instructed the jurors they could not consider damages unless they first found BMT liable, instructions the jurors are presumed to have followed. Because the jury found it was not liable, BMT maintains, the jury never considered its damages-mitigation evidence of Marion's legal fees and early redemption of CDs, and hence this evidence did not prejudice him. As for recognizing an aiding and abetting fraud cause of action, BMT reiterates this Court has never done so and submits we should "not plow new ground." *Id.* at 19. It contends that while "other long-standing Pennsylvania torts . . . may have slightly different elements, the wrongful *conduct* that would be captured by any properly defined aiding-and-abetting fraud claim can already be addressed through these existing causes of action." *Id.* (emphasis in original). Moreover, BMT offers, Marion's arguments in favor of a less-than-actual-knowledge scienter requirement "fall flat." *Id.* at 24. Specifically, it asserts a "general awareness" standard requires actual knowledge of the primary violation, actual knowledge cannot be inferred based on substantial assistance alone, there is no precedent for imposing a more lenient knowledge standard in the context of a Ponzi scheme, and a "reckless disregard" standard would be incompatible with the great weight of authority and risk imposing sweeping liability. *See id.* at 24-28.

### III.

### A.

It lies firmly within this Court's authority to recognize and adopt a common law cause of action as a matter of first impression. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 352 (Pa. 2014) ("Causes of action at common law evolve through either directly

applicable decisional law or by analogy and distinction."); *id.* ("its equitable powers afford the Court the authority to modify the common law forms of action to the right involved"); *see also D'Errico v. DeFazio*, 763 A.2d 424, 433 (Pa. Super. 2000) ("[O]nly our supreme court and the legislature can adopt new causes of action in Pennsylvania."); *see generally* 2 STANDARD PENNSYLVANIA PRACTICE 2D §6:36 observation (Nov. 2022) ("Causes of action are not limited to those set forth by statute or by the doctrine of stare decisis, and in the absence of a binding court opinion specifically holding that a particular civil cause of action cannot exist, the civil law is free to grow and expand with changing social, economic, and political conditions."). Importantly, however, this authority should be exercised with caution and restraint. "While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system." *Elliot-Thomas v. Smith*, 110 N.E.3d 1231, 1235 (Ohio 2018), *quoting Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998).

Here, while we tread cautiously, we nonetheless recognize the tort of aiding and abetting fraud under Pennsylvania law. There are a number of persuasive grounds for endorsing this cause of action. First, the Court implied this result in *Skipworth*. There, we considered whether the trial court erred in granting summary judgment to the defendants on a claim of concert of action under section 876(a). *See Skipworth*, 690 A.2d at 174 ("The final question for this court to review is whether the trial court properly entered summary judgment in favor of Appellees on Appellants' concert of action claim. This theory provides in pertinent part that '[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him. . . . '"), *quoting* RESTATEMENT (SECOND) OF TORTS §876(a). We observed that although this cause of action had "not yet been discussed by this [C]ourt," it "ha[d] been addressed by our Superior Court" in

*Burnside v. Abbott Laboratories*, 505 A.2d 973 (Pa. Super. 1985), and *Kline v. Ball*, 452 A.2d 727 (Pa. Super. 1982). *Id.* The *Skipworth* Court found the Superior Court's "interpretations of the concert of action theory" in *Burnside* and *Kline* to be "eminently reasonable" and "expressly adopt[ed] them." *Id.* at 175. Ultimately, we concluded "the trial court correctly entered summary judgment on the concert of action claim." *Id.*

In *Burnside*, the Superior Court recognized a claim of concert of action under section 876(a). *See Burnside*, 505 A.2d at 982 ("A cause of action for concerted activity under Section 876 of the Restatement (Second) of Torts has been recognized only recently by the courts in Pennsylvania."). *Kline* endorsed this tort as well. *See Kline*, 452 A.2d at 728 ("Unlike the court below, we are inclined to feel that appellants' argument from the Restatement of Torts 2d has merit, and that on facts similar to those of the instant matter, §876 might well prove applicable."). Thus, by expressly adopting these interpretations of the theory, *Skipworth* likewise recognized claims of concert of action arising under section 876(a). *See Kilbride Invs. Ltd. v. Cushman & Wakefield of Pennsylvania, Inc.*, 294 F. Supp. 3d 369, 384 (E.D. Pa. 2018) ("[I]n [*Skipworth*] the court endorsed § 876(a) of the Second Restatement's 'concert of action' theory[.]"). *Skipworth*'s approval of claims under section 876(a) suggests the Court's receptivity to causes of action arising under section 876(b) as well, which encompasses claims of aiding and abetting fraud. *See In re Houston Reg'l Sports Network, L.P.*, 547 B.R. 717, 759 (U.S. Bankr. Ct. S.D. Tex. 2016) ("The Restatement (Second) of Torts recognizes aiding and abetting fraud as a cause of action, holding a person liable where he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . .'"), *quoting* RESTATEMENT (SECOND) OF TORTS §876(b).

Decisions of our intermediate appellate courts also support recognition of an aiding and abetting fraud cause of action. Most directly, *Sovereign Bank* involved a claim of aiding and abetting fraud in the banking context. *See Sovereign Bank*, 914 A.2d at 417 ("Sovereign alleged one count of aiding and abetting against Mr. Ganter, claiming he actively, knowingly, and intentionally facilitated Mr. Valentino's fraudulent scheme by knowingly exchanging funds for the proceeds of such scheme and depositing proceeds of such scheme into his personal accounts.") (internal quotation marks omitted). The Superior Court held this claim was "a recognized civil cause of action under Pennsylvania law." *Id.* at 416, 427. In addition, the Commonwealth Court has held a claim of aiding and abetting breach of a fiduciary duty, which is distinct from but analogous to a claim of aiding and abetting fraud, "is a viable cause of action in Pennsylvania**."** *Koken*, 825 A.2d at 731; *see also id.* at 732 ("[T]his Court concludes that the Liquidator has stated a cause of action against Deloitte for aiding and abetting a breach of fiduciary duty pursuant to Section 876 of the Restatement (Second) of Torts."). Furthermore, in *Kline*, as noted, the Superior Court broadly stated "§ 876 might well prove applicable" in a future case**.** *Kline*, 452 A.2d at 728. Hence, *Kline* endorsed section 876 in its entirety, including section 876(b). Indeed, *Kline* quoted the full text of section 876, and stated that commentary concerning section 876(b) was particularly "*apropos*." *Id.* at 728 n.1.

Federal courts too have construed Pennsylvania law to recognize a claim of aiding and abetting fraud. *See Kilbride Invs. Ltd.,* 294 F. Supp. 3d at 384 ("Pennsylvania law now recognizes a civil claim for aiding and abetting fraud."); *Panthera Rail Car LLC v. Kasgro Rail Corp.,* 2013 WL 4500468, at *8 (W.D. Pa. Aug. 21, 2013) (unpublished opinion) (same); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, 2009 WL 2407835, at *3 (S.D. N.Y. Aug. 5, 2009) (unpublished memorandum) ("[T]he Pennsylvania Supreme Court would recognize a cause of action for aiding and abetting

fraud[.]"); *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 309 (S.D. N.Y. 2009) ("Aiding and Abetting Fraud is a Valid Claim under Pennsylvania State Law.").

Beyond this Commonwealth, a number of other states recognize this specific cause of action, including Arizona, New York, Washington, New Jersey, Connecticut, Massachusetts, and Tennessee. *See, e.g.*, *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 23 (Ariz. 2002); *Oster v. Kirschner*, 905 N.Y.S.2d 69, 72 (N.Y. App. Div. 2010); *Norton v. U.S. Bank Nat'l Ass'n*, 2017 WL 679991, at *4 (Wash. Ct. App. Feb. 21, 2017) (unpublished opinion); *State of New Jersey, Dep't of Treasury, Division of Inv.v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super. Ct. App. Div. 2006); *Brunette v. Bristol Savings Bank*, 1994 WL 468448, at *2 (Conn. Super. Ct. Aug. 22, 1994) (unpublished opinion); *Norman v. Brown, Todd & Heyburn*, 693 F. Supp. 1259, 1264 (D. Mass. 1988); *Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700 (S.D. Miss. 2002). More generally, "twenty-eight [jurisdictions] have adopted a claim for aiding and abetting in some context." *Dale,* 203 F. Supp. 2d at 700 n.5 (collecting cases).

In addition to the abundant decisional support, both in Pennsylvania and elsewhere, for adopting the tort of aiding and abetting fraud, the reasonableness and propriety of this course is further substantiated by the Restatements' recognition of this cause of action in sections 876(b) and 28. The Restatements are the product of the American Law Institute, "a non-profit organization of 4000 lawyers, judges, and law professors, established to produce scholarly work to clarify, modernize, and otherwise improve the law." *Tincher*, 104 A.3d at 353 n.6. They "synthesi[ze] . . . the common law [and] articulate[ ] the reasoned, mainstream, modern consensus." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 606 (Pa. 2012). To be sure, even when restatement provisions have been adopted by this Court, they are not "controlling in the manner of a

statute." *Coyle by Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1385 (Pa. 1991). But the Restatements' reasoned, mainstream determination to recognize a cause of action for aiding and abetting fraud represents persuasive authority for us to determine likewise.

Policy considerations also favor this path. The availability of this cause of action may help to deter secondary actors from contributing to fraudulent activities, which would curtail fraud overall. Many frauds, especially complex commercial frauds, cannot be perpetrated without the active assistance of secondary actors such as accountants, lawyers, bankers, analysts, etc. Recognition of this tort could also help ensure victims of fraud are made whole. It is not uncommon, again particularly in the context of complex commercial frauds, for the primary fraudster to be unable to fully compensate his victims. In these circumstances, aiding and abetting liability may be a way for fraud victims to gain a greater measure of redress than they would otherwise be able to achieve. Moreover, while helping to deter fraud and compensate victims, our formal adoption of this cause of action will not subject innocent actors to liability. As detailed below, to be liable for this tort, a party must have actual knowledge of the fraud. In addition, a party must provide substantial assistance or encouragement to the primary actor. Unwitting or uncooperating actors will not face liability. Nor will today's decision upend settled expectations. Our express endorsement of aiding and abetting fraud is confirmation of existing law in Pennsylvania pursuant to which individuals have long modeled their conduct. We are not breaking new ground that will set Pennsylvanians scrambling to change their behaviors. Sound policy implications, together with widespread judicial receptivity and the reasoned and scholarly approval of the Restatements, call for recognizing the tort of aiding and abetting fraud under Pennsylvania law.

The arguments of BMT and its *amici* do not persuade us otherwise. While it is true, as BMT notes, that this Court has not heretofore explicitly adopted this tort, simply because we have not previously had the occasion to expressly endorse a common law cause of action does not, of course, forever foreclose us from doing so. The common law is not static; it is "a living and developing legal system designed to serve societal needs in elevating the life and utility of the law." *Estate of Grossman*, 406 A.2d 726, 731 (Pa. 1979). Indeed, "[t]here is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night." *Hack v. Hack*, 433 A.2d 859, 868 (Pa. 1981), *quoting State v. Culver*, 129 A.2d 715, 721 (N.J. 1957).

To BMT's contention a cause of action for aiding and abetting fraud would not "serve the best interests of society," Appellant's Brief at 25, *quoting Cafazzo*, 668 A.2d at 527, we have two rejoinders. First, what we stated in *Cafazzo*, quoting the Wisconsin Supreme Court, was that "[b]efore a **change** in the law is made, a court, if it is to act responsibly must be able to see with reasonable clarity the results of its decision and to say with reasonable certainty that the **change** will serve the best interests of society." *Cafazzo*, 668 A.2d at 527, *quoting Hoven v. Kelble*, 256 N.W.2d 379, 392 (Wis. 1977) (emphasis added). As discussed, the Superior Court has squarely recognized this cause of action since at least 2006, when it decided *Sovereign Bank*, and arguably since *Kline* was decided in 1982. In light of the extant Pennsylvania precedents supporting recognition of the tort of aiding and abetting fraud, we do not see today's holding as a "change" in the law so much as affirmation of existing jurisprudence. In any case, we perceive clear societal benefits to adoption of this cause of action, including deterring fraud and fully compensating fraud victims.

We disagree the tort of aiding and abetting fraud would be "duplicative" of existing causes of action. Appellant's Brief at 22, 28; PCCJR and PICPA's *Amici* Brief at 2. A claim for fraud requires the plaintiff to prove the following: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). "In order to state a cause of action for civil conspiracy, a plaintiff must show 'that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.'" *Skipworth*, 690 A.2d at 174, *quoting Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000). To prevail on a claim of breach of fiduciary duty, a plaintiff must show: "the existence of a fiduciary relationship between [the p]laintiff and [the defendant], that [the defendant] negligently or intentionally failed to act in good faith and solely for [the plaintiff's] benefit, and that [the plaintiff] suffered an injury caused by [the defendant's] breach of [its] fiduciary duty." *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. 2020). Lastly, as the trial court correctly instructed the jury here, "[t]o prove a claim for violation of the Uniform Fiduciaries Act, the [plaintiff] must establish the following: [t]hat [the defendant] dealt with one who was a fiduciary; [n]ext, that the fiduciary breached his fiduciary duty; [a]nd, number three, that [the defendant] either had actual knowledge of the breach or knew sufficient facts to amount to bad faith." N.T. 3/16/18 at 104; *see also* 9 C.J.S. Banks and Banking §362 (Nov. 2022) ("Under the Uniform Fiduciaries Act, a bank dealing with a fiduciary who breaches

fiduciary obligations generally is liable only if it acts with actual knowledge of the breach or in bad faith or takes a check in payment of or as security for a personal debt.").

Each of the foregoing causes of action requires one or more elements aiding and abetting fraud does not. Specifically, fraud requires the defendant to make a false representation to the plaintiff; civil conspiracy requires the defendant to enter into an agreement to engage in tortious conduct; negligence requires the defendant to have a duty of care to the plaintiff; breach of fiduciary duty requires the defendant to have a fiduciary relationship with the plaintiff; and a violation of UFA requires the defendant to have dealings with a fiduciary. Liability under an aiding and abetting fraud theory does not require any of these showings, and the tort is consequently not redundant of these other, distinct causes of action.

Nor do we agree the "conduct" giving rise to an aiding and abetting fraud claim would always support "existing causes of action[,]" such that there is no need to acknowledge the aiding and abetting tort. Appellant's Reply Brief at 19. Circumstances vary, and while it is surely correct that in many instances the victim of a fraud will be able to pursue other theories of relief besides one of aiding and abetting, this will not universally be the case. Inevitably, there will be situations where an aiding and abetting fraud theory is the only available means for fraud victims to pursue recompense, and they should be afforded this opportunity. "It is fundamental to our common law system that one may seek redress for every substantial wrong." *Niederman v. Brodsky*, 261 A.2d 84, 85 (Pa. 1970), *quoting Battalla v. State*, 176 N.E.2d 729, 730 (N.Y. 1961).

We are likewise unpersuaded by the parade of horribles summoned by BMT and its *amici*. Our formal recognition of the tort of aiding and abetting fraud will not lead to "doctrinal confusion" or otherwise plunge Pennsylvania law into "uncertainty." Appellant's Brief at 28; PCCJR and PICPA's *Amici* Brief at 8. Because this cause of action has long

been endorsed by intermediate appellate precedents and contains distinct elements readily distinguishing it from other causes of action, we have every confidence it will be clearly understood and predictably applied by our able judiciary. We are likewise confident our holding will not give rise to "mischie[vous]" or "abusive" litigation practices. Appellant's Brief at 19, 30; PCCJR and PICPA's *Amici* Brief at 9. In the main, the prospects of attorney discipline and sanctions dissuade counsel from such conduct, and we have no cause to believe these deterrents would be any less effective in this context. *Amici*'s predictions of dire economic consequences are similarly overblown. *See* PCCJR and PICPA's *Amici* Brief at 2, 13. Again, this tort has been a feature of Pennsylvania law (albeit one not directly recognized by this Court) for many years, and, as *amici* themselves acknowledge, *see id.* at 14-16, a number of other states have endorsed this cause of action as well. Yet, *amici* point us to no actual, concrete adverse financial impacts, either in Pennsylvania or in any other jurisdiction.

Finally, we see no reason to "defer" this issue to the General Assembly. PCCJR and PICPA's *Amici* Brief at 19. The recognition of causes of action is the joint prerogative of this Court and the legislature. *See Tincher*, 104 A.3d at 352; *D'Errico,* 763 A.2d at 433. Moreover, we are not creating entirely new law but rather affirming existing Pennsylvania jurisprudence, and the societal benefits of our decision are readily apparent. While it cannot be gainsaid that there are "superior tools and resources available to the [l]egislature in making social policy judgments," *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1245 (Pa. 2012), the tort of aiding and abetting fraud is not foreign to our law and its policy implications are not opaque. Under the circumstances here, it is entirely appropriate for this Court to exercise its independent authority to incrementally evolve the common law, and not punt the question to the General Assembly.

**B.**

Having determined to recognize a cause of action for aiding and abetting fraud, we turn next to the question of the correct scienter or state of mind requirement for this tort. For reasons similar to those leading us to endorse the cause of action in the first place – an extensive body of supporting authority, the guidance of the Restatements, and policy concerns – we hold a party must have actual knowledge of the underlying fraud in order to be found liable.

Numerous courts have held aiding and abetting fraud requires actual knowledge. *See, e.g.*, *McNally v. Kingdom Tr. Co.*, 2022 WL 248094, at *11 (W.D. Ky. Jan. 25, 2022) (slip copy) ("'[A]ctual knowledge' is required for the purposes of establishing aiding and abetting liability[.]"); *U.S. Tsubaki Holdings, Inc. v. Estes*, 149 N.Y.S.3d 43, 46 (N.Y. 2021) ("A plaintiff alleging an aiding and abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance.") (quotation marks and citation omitted); *In re TelexFree Sec. Litig.*, 357 F.Supp.3d 70, 77 (D. Mass. 2019) ("An argument that a bank should have recognized a fraud is insufficient to meet the actual knowledge requirement. The fact that a bank should have recognized fraud does not mean that it had actual knowledge of fraud. An aiding and abetting claim demands a showing of 'actual knowledge' of the underlying wrongdoing.") (quotation marks, citation, and emphasis omitted); *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) ("Under Minnesota law, the scienter (knowledge requirement) for aiding and abetting is 'actual knowledge.'") (citation omitted); *Johnson v. Filler*, 109 N.E.3d 370, 376 (Ill. App. Ct. 2018) ("Steven argues that 'should have known' is sufficient to allege a claim for aiding and abetting. However, recent cases . . . refer to the standard of actual knowledge, not constructive knowledge. . . . Additionally, other courts have rejected the notion that constructive knowledge is sufficient to support a claim for aiding and abetting.")

(citations omitted); *Riverside Fund V, L.P. v. Shyamsunder*, 2015 WL 5004924, at *5 (Del. Super. Ct. Aug. 17, 2015) (unpublished opinion) (same); *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917, 922 (6th Cir. 2013) ("We agree that actual knowledge is required to prove a claim for aiding and abetting tortious conduct under Michigan law."); *Wiand v. Wells Fargo Bank, N.A.*, 938 F.Supp.2d 1238, 1244 (M.D. Fla. 2013) ("In actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had actual knowledge of [the] fraudulent activities.") (quotation marks and citation omitted) (alteration in original); *Capitaliza-T, Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del.*, 2012 WL 3150386, at *1 (D. Del. Aug. 2, 2012) (memorandum order) ("I find that actual knowledge is the standard for imposing liability for aiding and abetting."); *Stern v. Charles Schwab & Co., Inc.*, 2010 WL 1250732, at *15 (D. Ariz. March 24, 2010) (order) ("The Court concludes that Arizona law requires actual knowledge of the fraud, breach of fiduciary duty, and securities fraud before aiding and abetting liability arises, and that the Sterns have not pled facts sufficient to show such knowledge."); *Casey v. U.S. Bank Nat'l Ass'n.*, 26 Cal.Rptr.3d 401, 406 (Cal. Ct. App. 2005) ("California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."); *Cahaly v. Benistar Prop. Exch. Tr. Co.*, 2003 WL 21246167, at *7 (Mass. Super. Ct. Feb. 25, 2003) (unpublished memorandum) (referring to "'actual knowledge' prong of aiding and abetting liability"); *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (under Ohio law "aider and abettor must have actual knowledge of the primary party's wrongdoing"). The veritable mountain of case law mandating actual knowledge powerfully supports imposing this requirement.

The Restatements also call for a scienter standard of actual knowledge. Section 876(b) of the Second Restatement of Torts specifies that aiding and abetting liability will lie only where the defendant "**knows** that the other's conduct constitutes a breach of duty." RESTATEMENT (SECOND) OF TORTS §876(b) (emphasis added). The comment to section 876 reiterates the actual knowledge requirement. The comment states "if the act encouraged is **known** to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance." *Id.* cmt. d (emphasis added). In addition, the comment explains section 876(b) "applies to a person who knowingly gives substantial aid to another who, as he **knows**, intends to do a tortious act." *Id.* (emphasis added). The Third Restatement of Torts also requires actual knowledge. Section 28 of the Third Restatement pertinently provides that "[a] defendant is subject to liability for aiding and abetting a tort" only if, *inter alia*, "the defendant **knew** that the other party's conduct was wrongful." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 (emphasis added). What's more, the comment to section 28 expressly states: "[t]he defendant's knowledge must be actual." *Id.* cmt. c. Further, the reporter's note to section 28 refers to the "requirement of actual knowledge." *Id.* reporter's note c.

With respect to policy, a scienter of actual knowledge strikes the right balance between permitting redress for fraud victims on the one hand and protecting defendants from excessive costs and liability on the other. On the compensating victims side of the ledger, a showing of actual knowledge is not an insurmountable burden for plaintiffs. As the United States Supreme Court has recently observed, "actual knowledge can be proved through 'inference from circumstantial evidence.'" *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768, 779 (2020), *quoting Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 cmt. c ("If the defendant's knowledge cannot be proven directly, it sometimes may be inferred from

circumstantial evidence such as the defendant's possession of documents or presence during relevant conversations."). Moreover, "willful blindness may support a finding of actual knowledge." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S.Ct. 941, 948 (2022). Furthermore, to prove actual knowledge, it is not necessary for the plaintiff to demonstrate the defendant "desired the tortious outcome." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM, §28 cmt. c. Also, actual knowledge does not require the aider and abettor to "underst[and] the full legal significance of the facts, or all the details of the primary wrongdoing." *Id.* Rather, "[i]t is sufficient if the defendant was aware of facts that made the primary conduct wrongful." *Id.*

On the other hand, while not insuperable, a scienter standard of actual knowledge is not easily satisfied. *See Terrydale Liquidating Tr. v. Barness*, 611 F. Supp. 1006, 1027 (S.D. N.Y. 1984) ("The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one."). As such, it will deter overreaching lawsuits and forestall improper findings of liability in the absence of blameworthy conduct. A more lax state-of-mind requirement, by contrast, would cast a wide net of liability that would risk "capturing ordinary corporate acts." *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 250 A.3d 122, 130 (Me. 2021). While we have little concern recognizing an aiding and abetting fraud cause of action with a scienter of actual knowledge will not open the floodgates to litigation and unwarranted judgments, or give rise to "terrible" economic consequences, PCCJR and PICPA's *Amici* Brief at 2, we would not be so assured if we were endorsing a lesser scienter requirement. It should go without saying that shielding parties from excessive litigation and liability are worthy goals, not least because they advance the economic health of the Commonwealth. An actual knowledge standard achieves a reasonable compromise between the competing policy interests at play.

Accordingly, we decline Marion's request to adopt the state of mind standard articulated by the Superior Court below. Again, the panel held that "if the defendant knew or should have known of the underlying bad actor's misdeeds, but instead exhibited intentional ignorance, . . . the knowledge element . . . is satisfied." *Marion*, 253 A.3d at 691 (citations omitted). Respectfully, we find this formulation problematic for two reasons. First, the "should have known" language connotes a negligence standard. *See El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 906 (W.D. Mich. 2010) ("[H]olding a defendant responsible for what it should have known or should have discovered were it exercising a greater level of diligence[] approaches a negligence standard."). Yet, it has been held mere negligence is not sufficient to support aiding and abetting liability. *See, e.g.*, *Aetna*, 219 F.3d at 536 ("We stress that the requirement is actual knowledge (which, again, may be proven by circumstantial evidence), and therefore evidence establishing negligence, *i.e.*, that a bank 'should have known,' will not suffice.") (emphasis omitted); *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991) ("Negligence . . . is never sufficient."). Similarly, the Third Restatement provides that "[n]egligence will not suffice; nor is it enough to prove that the defendant should have known of the primary actor's wrongful conduct but did not." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 cmt. c. We agree a negligence standard is ill-suited to this context. A negligence standard would be highly susceptible to hindsight bias, with the occurrence of the fraud coloring the factfinder's determination as to whether the defendant "should have known" of the fraud. Additionally, a negligence scienter would effectively oblige banks like BMT and other entities who engage in a high volume of commercial transactions with numerous customers to engage in costly and intrusive monitoring and investigations of their customers' activities.

Second, we disagree a showing of "intentional ignorance" is necessarily sufficient to satisfy the knowledge requirement of aiding and abetting fraud. Intentional ignorance is not knowledge; it is the purposeful avoidance of knowledge. Jessica A. Kozlov-Davis, *A Hybrid Approach to the Use of Deliberate Ignorance in Conspiracy Cases*, 100 MICH. L. REV. 473, 483 (2001) ("Deliberate ignorance is not genuine knowledge."). As discussed, a scienter requirement less than actual knowledge is inconsistent with mainstream case law and scholarly thought, and would be detrimental as a matter of policy. Certainly, however, while the standards are not coextensive, as noted, evidence of intentional ignorance or willful blindness may support an inference of actual knowledge in particular cases. *See Unicolors*, 142 S.Ct. at 948. As the late Justice Kennedy has cogently explained:

> Facts that support willful blindness are often probative of actual knowledge. Circumstantial facts like these tend to be the only available evidence in any event, for the jury lacks direct access to the defendant's mind. The jury must often infer knowledge from conduct, and attempts to eliminate evidence of knowledge may justify such inference, as where an accused [aider and abettor] avoids further confirming what he already believes with good reason to be true.

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 774 (2011) (Kennedy, J., dissenting).

In support of the panel's ruling, Marion argues the Second Restatement of Torts does not "define the level of knowledge required." Appellee's Brief at 25. However, the Third Restatement makes the requirement of actual knowledge pellucidly clear. *See* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM §28 cmt. c. ("The defendant's knowledge must be actual."); *id.* reporter's note c. (referring to "requirement of actual knowledge"). And both Restatements use variations of the verb "know." "Know" does not mean "should have known" or "intentional ignorance."

Moreover, Marion's (and the panel's) reliance on *HRANEC*, *Grimm*, and *Resolution Trust* is misplaced. *HRANEC* involved a claim of concert of action under section 876(a), not aiding and abetting under section 876(b). *See HRANEC*, 107 A.3d at 119 ("Appellant alleged in its second amended complaint that . . . [b]y assisting the employees in converting the stolen coils into money, [Metalico] acted in concert with the employees who removed the coils from [Appellant's] property for the specific purpose of selling them to [Metalico].") (internal quotation marks omitted); *id.* at 125 ("Appellant has established a *prima facie* case that Metalico was acting in concert with the individuals sufficient to sustain a claim for concerted tortious conduct under section 876 of the Restatement (Second) of Torts."). *Grimm* misrelied on *HRANEC*, where *Grimm* involved a claim of aiding and abetting, rather than concert of action. *See Grimm*, 149 A.3d at 88. Furthermore, in *Grimm*, the plaintiff failed to plead the requisite substantial assistance or encouragement. *See id.* at 89 ("In this case, Grandson failed to plead that Attorney Roskovensky encouraged Grandfather to confront Grandson[, and] . . . Attorney Roskovensky was not present at the scene of the alleged battery."). Hence, *Grimm*'s discussion of the state of mind requirement was not necessary to the decision, but rather mere non-binding *dicta*.[5]

Similarly, in *Resolution Trust*, the governing legal standard obliged the district court to "accept as true" that "the wrongful acts were known to the Attorney Defendants." *Resolution Tr.*, 823 F. Supp. at 305, 309. Thus, to the extent the court in *Resolution Trust* elsewhere endorsed a state of mind requirement less than actual knowledge this was *dicta*. Finally, and in any case, it is axiomatic that Superior Court decisions and lower federal court cases do not bind this Court. *See In re Estate of duPont*, 2 A.3d 516, 524 (Pa. 2010) ("[T]his Court is not bound by the Superior Court's holdings[.]");

_____

[5] To the extent *HRANEC* and *Grimm* may be read to hold actual knowledge of the fraud is not required to sustain a claim of aiding and abetting fraud, they are disapproved.

*Commonwealth v. Bennett*, 57 A.3d 1185, 1203 (Pa. 2012) ("[W]e are not bound by the decisional law of the lower federal courts[.]").  In the absence of any controlling authority dictating otherwise, we follow the great weight of authority providing that actual knowledge of the underlying wrongdoing is required to support liability for aiding and abetting fraud.

**C.**

The remaining subquestion raised by our limited allocatur grant — whether the jury's no-liability finding necessarily bars relief for Marion — may be readily answered in the negative.  The Superior Court held the jury's verdict for BMT was irretrievably tainted by the erroneous introduction of evidence of Marion's attorney's fees and early redemption of CDs.  Accordingly, the panel vacated the judgment for BMT and remanded for a new trial.  *See Marion*, 253 A.3d at 694-707.  BMT separately sought allowance of appeal as to whether the panel erred in vacating the jury's verdict, *see supra* note 2, but we did not grant review of this issue.  Because it is outside the scope of our limited grant of allowance of appeal, we do not consider the propriety of the panel's reversal of the jury verdict.  *See Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 478 n.11 (Pa. 2021) ("As this line of argument is outside the scope of our limited grant of allowance of appeal, we decline to consider it."); *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1255 n.3 (Pa. 2006) ("Because such issues are outside the scope of this Court's limited grant of allowance of appeal, we will not consider them.").  For present purposes then, there is no valid jury verdict for BMT, and nothing barring relief to Marion upon remand for a new trial.  BMT insists the "only way" to address whether the jury's verdict precludes relief is to consider whether the panel erred in overturning it.  Appellant's Reply Brief at 3.  On the contrary, an alternate course is clear, and dictated by our precedents: to stay

within the bounds of our limited allocatur grant and leave undisturbed the panel's order vacating the jury verdict.

## IV.

In conclusion, we hold Pennsylvania law recognizes the tort of aiding and abetting fraud, and the scienter requirement for this cause of action is actual knowledge of the underlying fraud. Consequently, the decision of the Superior Court is affirmed in part and reversed in part. The case is remanded to the trial court for a new trial consistent with this opinion. Jurisdiction is relinquished.

Chief Justice Todd and Justices Donohue, Wecht, Mundy and Brobson join the opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.